We have one case this morning, which is number 22-20-59, Sherwin-Williams Company versus PPG. Mr. Costantinos. Thank you, Your Honor. Good morning, and may it please the court. I want to start this morning with our arguments for judgment as a matter of law, and then turn to our alternative arguments for a new trial. Our case for judgment as a matter of law is straightforward. No reasonable jury could have found Sherwin's asserted claims invalid. PPG's invalidity case violated this court's cardinal rule that expert testimony inconsistent with the record must be disregarded. That's reflected in cases from this court, such as Homeland Housewares, Motorola, and Cripples, among others that are cited in our briefs. For anticipation, PPG's expert witnesses read things into the Perez patent that are simply not there, including, most importantly, organic solution polymerization. And you had the ability to cross-examine those witnesses. We did, Your Honor. That's absolutely the case. For single reference obviousness, its witnesses presented the epitome of unreasoned conclusions, as reflected at page 38 of our blue brief. And PPG's Perez plus Ranca obviousness combination theory blinkered the reality that Perez, on its face, says that the polymeric surfactant of, and I quote, the present invention, is polymerized in water. If we uphold the anticipation judgment, we don't have to reach obviousness. Is that right? I think that if you uphold the anticipation judgment, then the judgment is upheld. But I don't think this court can uphold the obviousness judgment for exactly the reason that I'm talking about right now. Take a look at Perez. At column two, lines 16 and 17, it describes the polymeric surfactant of the present invention as polymerized in water. It then describes Ranca, the prior art that's cited in the background section, as an acrylic polymer made by organic solution polymerization. We don't have any claim construction or anything that required, as a matter of law, limiting Perez to just the water-based polymerization. I'm sorry, I heard limiting, but I didn't hear what the word was after that. To the water-based polymerization, it's not, there's no claim construction. That is, the expert, you don't argue the expert gave testimony inconsistent with a binding claim construction about what is disclosed in Perez. There was no claim construction of the prior art, but the prior art very clearly says that Perez's present invention, this is simple. It was a fact dispute, and both sides presented their evidence as to what Perez disclosed, right? But the expert contradicted what is on the face on Perez. The problem, it seems to me, there are two problems, and they're related but different, is that Perez does call out Ranca in the background. We've got some case law supporting this. And there's also some disclosure in Perez,  where it does disclose that the present invention doesn't preclude small amounts of organic solvents for being included for purposes known in the art, if desired. So you've got two disclosures in the specification that reference this organic solution, go beyond the water. So we had expert testimony as to the import of those disclosures, and it seems a little hard to get around a jury conclusion. I don't think it's hard at all, because that column five disclosure, Your Honor, is talking about small amounts of organic material that's added after polymerization. It's not the organic solution polymerization itself. It's adding a little bit after polymerization. But keep in mind what the whole import of Perez is. It's to avoid VOCs, volatile organic content. Yeah, but isn't there sufficient basis to conclude that Perez is teaching that organic solvents, small amounts, are OK? It doesn't say Perez doesn't preclude the using of organic solvents. And there are these references in the spec and in the background section to organic solvents. So the jury listened to the experts, and they drew that conclusion. Judge Prost, let me distinguish here. Organic solvents added after polymerization is a fundamentally different thing than polymerization in organic solutions. That's really important here. That's the difference between Perez and Rankin. When you're polymerizing in organic solutions. And did you put that argument before the jury through being an expert or via cross-examination? Those arguments were absolutely made within the jury trial, in front of the cross-examined experts. But that's why we're here on JMOL. That's exactly what JMOL is here for. As this court has held repeatedly, again, homeland housewares, which Judge Dyke wrote for the court in which you joined. The court does not allow experts to contradict the record, particularly when the record in your Perez is so clear in this regard. First of all, look at Perez, not just the disclosure of the organic solution polymerization as not the invention, but also look at the fact that all 18 examples disclose only water polymerization. Look at the fact that all of the claims disclose only that. Then on top of that, even if you don't accept that, the strict identity requirement of anticipation law requires that the elements also be arranged as in the claim. OK. There's nothing in, just to complete the thought, I'm sorry, Your Honor. Just to complete the thought, there's nothing in Perez that shows organic solution polymerization arranged in the way that the Sherwin claims teach and claim organic solution polymerization. Can we turn to the judicial estoppel issue relating to Perez? Sure. Just a couple of preliminary questions. If there is a judicial estoppel, you agree that it's binding, that you can't introduce testimony to refute it, right? No, I don't agree with that at all. Our whole point is that we can. What case says that you can refute a judicial estoppel by testimony? Well, estoppel, the, well first, let me back up a moment. Answer that question. OK, so I don't know that I have a particular case, but we have a case cited in our brief that says that with regard to a judicial admission. No, no, we're not talking, we're talking about judicial estoppel. And our decision in trustees in bankruptcy of North America says specifically that you're precluded from arguing the contrary if it's a judicial estoppel. And you're not able to cite a contrary case, I take it. Well, if we are judicially estopped, then we are estopped. Our argument is that we are not. So you agree that there's no, you can't refute it if it's a judicial estoppel. If it is an estoppel, then we are estopped. Our point is that we are not estopped because we're rejecting it. We'll get to that in a second. The second question is, if the board was influenced to reach a decision and there's a judicial estoppel, the fact that the board decision was vacated later doesn't make any difference, right? Well, I think it does make a difference in a whole lot of ways here. Because first of all, the- It doesn't wipe out the judicial estoppel, right? Well- I didn't see that you argued that. I didn't see it either. I mean, I look over it and I don't know. I don't know that we've argued that. But I don't know that we've argued that in so many terms. The problem, though, with the whole estoppel argument is we don't even know what kind of estoppel was applied to us. OK, but we'll get there. OK. But if it's a judicial estoppel, the fact that it was vacated doesn't make any difference. It may not. I agree with that. OK. All right, so let's talk about the estoppel here. So the board rejected Perez because it wasn't sufficiently flexible to be a coding based on the Breckenridge testimony and testing, right? Correct? Right. And so Breckenridge said, here's Perez. I've tested it. And it's not sufficiently flexible. But he did not include in what he tested the BPA epoxy. And in fact, said that Perez was BPA free. Now, you come in here and you want to refute what the Breckenridge said and what the board said by testimony by Short. But Short is not using the same version of Perez as Breckenridge, right? Because he's adding this BPA epoxy based on the lab notebooks, correct? I think that's right, if my recollection is correct, yes. OK, but tell me how it is that in light of judicial estoppel, you can tell the board about one version of Perez which Breckenridge relies on, which doesn't have BPA, doesn't have an epoxy. And then later on say, well, we're going to use a different version of Perez, which does have an epoxy and therefore has BPA. That seems to me not consistent and to be the exact sort of thing that judicial estoppel is designed to prevent. So of course, that's not the judicial estoppel that was applied to us. What the judicial estoppel that was applied to us was very simply that we were not allowed to challenge at all the fact that Perez was actually not BPA free. OK, I think it's similar, but let's put it aside. OK, well, the estoppel, whatever kind it was that was applied to us, was much less surgical than the one that you're describing. It was a much broader brush. What's wrong with the hypothesis that I just articulated? Well, what's wrong with it is it's not the ruling that we're appealing here. And what I want to get across here first is that what the ruling that was applied to us was a statement that was made in a parenthetical before the board that Sherwin or that time. Address the merits of what I just said. Well, I will address the merits of what you said by saying that it could be because, of course, estoppel is equitable. And all types of estoppel are equitable and takes into account a very sensitive accounting of the facts and circumstances of the case. And the problem with addressing what you've said is that everything you've said may very well be true. But what it also doesn't take into account is the fact that the parenthetical, which contains the stopping statement, was made in response to a PPG statement, which said that Perez was BPA free. A statement that was made in 2012 when PPG had made in 1992. I don't think that's a fair characterization. This is your argument that you only assumed arguendo for purposes of the re-exam that Perez disclosed a BPA free coding, right? Well, it was an agreement with what PPG had asserted. Well, you say in your briefing that you agreed arguendo. You simply agreed for the sake of argument. Is there anywhere in the record you can point to to indicate that you were doing this only arguendo and you weren't, in fact, agreeing that Perez disclosed a BPA free coding? Were I writing that I would have preferred to have used the word arguendo? The lawyers who wrote it did not use the word arguendo. If you were litigating the re-exam, you would have said arguendo. I would have said it more clearly. But if you look at the full context of what was said before the board, it was we agree with what PPG and the examiner have said. And then we're going to explain why this is a lousy can code. There's not one place in the re-exam where you indicate, well, we don't really know. It's their patent. We're reserving our rights. There may be district court litigation. There's nothing like that. There is nothing like that. But here's what we do know after the fact. And I just do want to point the court to. One other thing, and then. I'm well into my rebuttal time already. We'll give you rebuttal time. I think it's worse than what we've already suggested in this back and forth. You affirmatively try to use the fact, which you seem to have conceded in the re-exam, that a BPA-free coding is disclosed in Perez by urging the examiner and the board, and I think even this court in BELS PAR 1, to find that Perez was not flexible enough to be used for CANS precisely because, at least in part, it was BPA-free. Isn't that, in fact, the fairest reading of what happened in the re-exam? That, actually, I'm going to disagree with you, Judge Stark. Because once you get past the parenthetical where the lawyers before the board for BELS PAR say, we agree with the examiner in this regard, everything that follows describing the inflexibility, the cracking, the insuitability of the coding for a CAN, there's no reference there whatsoever to the BPA-free nature. What am I missing? I mean, I think I went through the record pretty carefully. At appendix 12.8.16, which is, I think, your submission to the board, pretty early on, A, under A, where you make a lot of arguments, the very first argument says, because of its use of epoxies, Christiansen's coding contains BPA. Perez, on the other hand, is a BPA-free coding. I guess, and then you've got the office action statements, where the argument you were making seems quite clear. You had to establish flexibility, and Perez was not flexible because it was BPA-free. It's the because part that I think is where I'm disagreeing with Judge Stark. Because you have, I'm looking at 12.8.16, along with you, and you can see Perez, on the other hand, is a BPA-free coding, and then there's the parenthetical, which I was referring to. Valspar agrees with the office's finding in this regard. And then there's however, which is a change in subject. However, Perez contains absolutely no indication that it could meet the stringent requirements of a CAN interior coding. Because it's BPA-free. That's not how it ever indicates. No, wait a second. It doesn't meet the flexibility requirement because it doesn't have an epoxy in it, right? If that's what, I think you can read, starting at 12.8.17, starting with B, Perez provides no teachings that would have led a person of ordinary skill to choose it as the basis for a CAN interior coding. And it talks about all the demanding requirements. But there are a lot of references to no epoxy, right? There are references to no epoxy. OK, and that seems to me to be a reference to BPA-free. Because the epoxy is what brings the BPA into it, as Short himself said. And as you said in the oral argument. So let me just point out before we move on from that, we also repeatedly emphasize the public notice function of the whole prosecution process to include re-exams. If we don't want, I don't think, the public to have to parse through with this level of inspection the patentee's statements during a re-exam. Judge Stark, let me make one point in this regard with regard to the fundamental unfairness of the estoppel. Because remember that treating this as an estoppel traces back to an agreement with an assertion made by PPG in the first instance. An assertion that was made based on the logical, one might say a fallacy, that the absence of evidence is evidence of absence. Which is Perez doesn't mention BPA, therefore it's BPA-free. And there was evidence that had we been able to put it in to the record in this case, would have been devastating to PPG's case. And it's fundamentally the issue that deprived us of a fair trial. But didn't it help you? I mean, wasn't the BPA-free status of Perez useful and relied on to establish its lack of flexibility, which dealt with the whole motivation issue, which was before the board of the exam. I mean, it was an argument that helped you, right? You used it to establish the lack of flexibility, which is ultimately what you used to establish the absence of motivation. Judge Prost, I appreciate what you and Judge Dyke have said here. But I think if you look at the pages that follow the parenthetical and then the word however, all of the pages that follow do not rely on the absence of BPA. They rely on the absence of an epoxy, which is where the BPA is. Which you said at oral argument. I mean, I don't have to read. You know about the oral argument statement. I mean, it was establishing they don't use BPA. They don't get the flexibility advantage from using the epoxy constituents, the BPA, for example. The point that I want to make here with regard to why this was a problem with regard to the fairness of the trial, I just want to point the court to pages 19412 through 19. And these are pages that are under the protective order. So I'm going to describe them only generally here in open court. This is Dr. Shor's expert report. And this is from discovery that was taken in. Which volume is this from? This is volume two, I believe. And I will take you particularly to the page. And I appreciate the court's patience with us here. 19380. 19412 is where we start. And you'll see that these pages are highlighted here. So it's designated highly confidential attorneys' eyes only. And the page in particular that I'd like to take you to is 19417, which is the carryover paragraph 115 from the previous page. And I'm sorry. Give me 49219. 19416 and 19417. And you'll see that 19416 is the reproduction of a page out of a lab notebook. And 19417 contains some of the doctor's written testimony. And he says on that very page, he says, I did something different. I added an epoxy which contains BPA. And that's how he got to the point of saying that Perez has BPA, which is a step that is absent from Bruckenbridge. Right, but what I also want to get across here is that this is reporting on a lab notebook from 1992 on PPG's own creation of a coding according to example 18 of Perez. But the fact that that was the commercial embodiment, that that's what they did, doesn't make it part of the Perez patent, right? This would have shown the jury that a coding prepared according to Perez had substantial. No, but answer my question. The fact that to make a commercial embodiment, they did a particular thing, doesn't make that a patent requirement. It might not, but it would have been devastating evidence. And it would have defeated the proposition that Perez was BPA-free. It might have been useful evidence, but not proper evidence. Well, it deprived us of the ability to put PPG to its proofs that Perez was BPA-free. Instead, they didn't have to prove that as part of the case. We didn't get a fair trial on that. They didn't have to prove an essential element of their case because of this estoppel ruling. And we didn't get to put this evidence in. Let me just shift for a little bit. There's one other issue I wanted to talk about. And that is, you say that the district court made an error in excluding some of the PPG patents. And you argue that the failure to mention Perez in those patents shows that this invention is not attributable to Perez, and that there's language in those post-patent patents that support the notion that this was something new, which is inconsistent with an invention of Perez. You make that argument. We do. I look back to the papers in the district court. I do not see that argument being made there. I see a different argument being made by your expert. I don't know whether you're familiar with the filing that was made at that time, but it does seem to me it's quite a different argument than the one you're making now. Maybe you're not, you don't remember. I don't remember that. And we certainly have not been subject to a charge that this argument wasn't made in the trial court. So this would be a new point to me. It certainly has been the case that the Perez patent has not been a particularly relevant patent to them. In fact, PPG used the Sherwin patents to try to come up with their in novel coding, despite the fact that they now claim that Perez was the Rosetta Stone for their invention, for their new product. OK, I think for the moment we're out of time to answer the questions. I'll give you five minutes for rebuttal, which will include the next question. I would just add that with regard to the other anticipation arguments, I don't want to let the fact that the anticipation and obviousness arguments, I don't want to let the fact that we didn't mention mean that we don't think there are substantial issues with regard to the failure of their expert to follow. We're out of time. Thank you. Ms. Stetson. Good morning, Your Honors. And may it please the court. My name is Kate Stetson. I represent PPG. Judge Stark, I want to start with a couple of process questions that you asked earlier. The answer to your question about, if you conclude that Perez anticipates, do you need to reach obviousness? The answer is no, you don't need to go on to reach those questions. The jury had three separate bases for its finding, anticipation and two types of obviousness. You also asked about whether this is, at bottom, a fact dispute. And I just want to emphasize, because I think sometimes it gets lost when we return to what sounds like closing argument in the district court. Anticipation is a fact question. Whether or not a prior artist. I think we're over. OK, yes. So I just, underlying all of these issues are facts questions. Disclosure, motivation. No, some of the admissibility questions are not fact questions. No, they're abusive discretion questions. Yes, with respect to new trial, that's exactly right. But with respect to anticipation, my point is that at bottom, this is a jury issue. And Judge Prost, as you said, there was ample evidence in front of the jury on anticipation. We cite in our briefs as to each of the four charges. Why is the other side not correct? That with regard to Estoppel, the fact that they didn't have the opportunity for discovery, and apparently there were disclosures in the interim, whether rightly or wrongly, not getting into the substance of what the expert did, but that the expert, because of discovery, the new expert, was able to rely on disclosures that were not available before the PTAB. Why doesn't this make a different case? And why shouldn't that be an exception under our case law, which is a little back and forth on certain issues? But why shouldn't that be the case with regard to at least the conclusion of binding admissions? So Judge Prost, I'd like to answer your question in a couple of different ways. The first is with respect to this new trial issue, this is an abuse of discretion standard. And as Mr. Castaneda has conceded, this is at bottom an equitable Estoppel issue, or an Estoppel issue, whatever label you put on it. No, no, no, no, you've got to address the merits of it. Yeah, we're relying on case law and what's allowed. I mean, this is of some consequence going forward. They didn't have the lab notebooks at the time of the re-exam proceeding, right? They did not have the lab notebooks at the time of the re-exam. But the issue, I think, with what Mr. Castaneda is arguing here is the issue that you pointed out, Judge Dyke, which is just because a lab notebook shows that with respect to one embodiment of Perez, when you add epoxy, you get PPA, doesn't mean that Perez does not disclose a BPA-free coding. That's a sort of merits dispute. Why doesn't all this mean they get a chance to at least fight that battle out in the district court? Because I think Judge Stark, one of the consequences, among other things, of letting Sherwin fight that battle out in the district court is that PPG would have been permitted to bring in all of the evidence about the re-exam proceeding also. Sherwin says in its brief that there's no evidence of some kind of a discovery trade-off. This case is replete with that evidence, including as well. OK, but that doesn't answer Judge Stark's question. So what? So why isn't this his question, I think, is the right one, which is, why isn't this a question, therefore, of context? And both sides should have an opportunity to put in that. And maybe you would have prevailed. Maybe the jury would have been persuaded that, no. But why isn't that something that should go on to the jury? I think, Judge Prost, that, again, there are a couple of different responses. The first is, it is within the district court's discretion to conclude. The answer is that judicial estoppel is not a jury question. That's quite right, yes. But what they are saying, as I understand it, is that judicial estoppel should not be applied here, because they did not have, at the time that they made the original representation to the board, access to the lab notebooks. And that they would, if they had had access to the lab notebooks, have made a different argument before the board. That's what I understand them to be saying. But just to play out that thread a little bit, and to go back to the questions that you were asking, Mr. Kastanis, Judge Dyke, the consequence of that would have been that they would have put on evidence, call this judicial estoppel, a judicial admission, equitable estoppel, whatever label you want to put on it, evidence that directly contradicts everything that they said, not just the parenthetical before the examiner, but a statement to the board, statements to this court. Well, let's assume hypothetically, hypothetically, that it is, they discovered something in discovery that completely, virtually unquestionably diminished, explained their reliance on one, and why now their reliance has changed. Why shouldn't that be relevant? Whether it's calling a binding, relevant to determining whether or not this should be a binding admission, or the judicial estoppel, whatever label we're gonna put on it. I think with respect to relevance, there's that series of additional questions that a district judge would have to ask herself. One of them is, is this probative of the issues that are in front of this jury, is this going to confuse the jury? Are we going to have, as the district judge said at some point, a sideshow about the re-exam proceedings? Is PPG gonna come in and talk about the examiner finding what it did? So relevance is just part of the inquiry. That said, I'm not even willing to concede that this is relevant for the reason that I mentioned a couple minutes ago. When you're talking about a lab notebook that says, with respect to this one embodiment, I've tested it, added epoxy, and out came BPA, that is not at all relevant to the fundamental question in this case, which is whether Perez discloses a BPA-free coding. And on that front- you've listed a bunch. Which legal rule or type of estoppel do you read the district court as having relied on, and which one do you think is established here? I think that judicial estoppel is probably one of the closest fits. The other thing that I would point you to is a judicial- Doesn't the Third Circuit require bad faith for judicial estoppel? It does not. Under Third Circuit principles, a change in a statement of fact does not require bad faith. Did the board clearly rely on what they said about Perez? I think absolutely it did, for the reason that Judge Dykport had pointed out, which is the entire basis of their re-exam argument, all the way up to and including this Court, is that Perez disclosed a BPA-free coding, and that BPA-free codings were not flexible enough. Just because the re-exam briefs didn't include the phrase or acronym BPA, it included epoxy over and over and over again. So this absolutely was fundamental to their discussion there. The other point that I would make, too, is when we're talking about the district judge's discretion to admit or exclude evidence based on a weighing of relevance versus prejudice and probative value and confusion, the other thing to point out is that the Third Circuit, in a case I don't think Mr. Castaneous refutes, talks about the nature of a judicial admission. This was a judicial admission, and it was made at three different points. So it's judicial estoppel and judicial admission? Yes, that's what I would say. Well, yeah, and they're a little different, and we have to consider that the district court, even calling out, it didn't explicitly reject judicial estoppel, but it called out, that's the argument, and they didn't rely on judicial estoppel. They chose to rely on binding admissions. And the differences Judge Stark was getting into, judicial estoppel requires reliance by the board, which is, you can put it together, but it's not quite as clear. Binding admissions is a little different. So which do you lean more heavily on, and is it a problem if your answer is judicial estoppel, because that's not what the board, I'm sorry, that's not what the district court relied on. So let me work backwards from that last part. It's not a problem, because as the court well knows, this court can affirm particularly an equitable ruling on any basis that was available to the district court, and the parties briefed all of the possible cases. Except we've got this case called Bio-Rad, which the other side relies on, which seems to, announces that, and then says, but, not so fast, and it rejects the ability, based on the abuse of discretion, a very discretionary issue then. It was pre-judgment interest or something, saying, no, no, no, no, we can't do it over on our own, because it's such a discretionary. So why doesn't that affect our analysis here on being able to go forward on judicial estoppel? I think the way maybe to work through this is to start with the standard of use of discretion review. Admit or exclude evidence. Proceed to the question about the nature of the admission. This was not a tossed off statement. This was not just a parenthetical. This was a repeated, tactical, strategic choice, precisely to advocate for the ultimate result that the board found, which was this Perez patent didn't produce a coding flexible enough. Once you add the standard of review together with the nature of these admissions, then you get to the question, Judge Prost, that you alluded to earlier, which is both sides can cite cases talking about where estoppel, whether it be judicial, equitable, or admission, or other, comes into play or doesn't come into play. It's a little messy. Where it's a little messy, that means to me that the district court didn't have any kind of legal north star pointing her to a conclusion that she had to reach. She was entitled to, in her equitable discretion, exclude this evidence because of the nature of the repeated admission below, an admission that was made, obviously, for strategic and tactical reasons. And in the end, again, this is a new trial motion we're talking about. Under Third Circuit principles, new trial motions are granted when there is an outrageous result below. They are granted in extraordinary circumstances. The standard is very high. And as was pointed out to Mr. Castanhas a little while ago, when we're in a case that talks not about a claim construction, but about issues in front of the jury, all fact questions, and a new trial motion based on the exclusion of evidence, we all know that that's an uncomfortable place to be for an appellant, and that's where we are. What- They're not really all fact questions because it seems to me, this question of the admissibility of this evidence, I mean, even if you decided to give it to the jury, the jury would fairly ask, well, what is the legal relevance of what was said before the board and what is the legal relevance? So this case, this issue is really hard for me, partly because I can't buy into the fact that it's exclusively a factual question. I think a predicate to this are all the legal issues and what our case law says about what abiding admission is and what judicial estoppel is. And there seems to be legal issues hanging out there that are necessary to resolve. I think there is maybe a difference, Judge Prose, between the legal issues discussed in the cases and the equitable authority of a court to admit or exclude evidence based on an estoppel or an admission. And I want to make one other thing clear. When the district court initially instructed- I don't see how there could be discretion to exclude something if the requirements of judicial estoppel aren't satisfied. I mean, that's a key predicate to our affirming the district court, is that there has to be a legal basis for finding judicial estoppel. And we've talked about that, but you can't dismiss that as sort of saying, oh, it's discretionary. It's not discretionary if there's a legal error there. If you conclude that it was error to follow the judicial estoppel principles, Judge Dyke, you would also have to conclude, in order even to get to this question  and I want to put a pin in that for a minute, you would also have to conclude that all of the other equitable arguments that were available to the district court and preserved in this court also don't apply. So that would be the path that you would have to take. But as to that last point, is this worthy of granting a new trial? Remember that what we're talking about is an instruction at the beginning of the case that says Perez teaches BPA-free. And what you had throughout this case is statements from the experts on direct and on cross making that exact point. If you look at appendix. I'm unclear on whether you're pressing an alternative argument under Rule 403 that their evidence that Perez does not disclose a BPA-free coding should be excluded or was excluded under Rule 403. I didn't see any explicit ruling to that fact from the district court. But is that an alternative grounds? It is an alternative ground, Judge Stark. And I'm conscious I'm eating into my rebuttal time as well. So I hope you'll indulge me. But it is an alternative ground. And there are plenty of bases for making the conclusion that that is appropriate. I certainly see the arguments that it'd be confusing and misleading and take time. But on the probative weight, it would seem to me if we reach this alternative grounds, it's because we were not persuaded there was a judicial admission, et cetera. And I would think their evidence in that light has a lot of probative value to issues and dispute at trial. Would you agree with that? And I guess just relatedly, can we do the balancing ourselves or would we remand that? Right, I think the answers for the reasons that we've already discussed, I don't see this as having probative value as to the question in this case, which is did Perez disclose BPA-free? What you have in the lab notebook is not devastating evidence. It is an example of one test to which epoxy was added and produced BPA. That does not drive to the question about whether the Perez patent teaches BPA-free. So number one, not probative. Number two, as you know- But the district court didn't do that. The district court just relied on the fact that this was a binding admission, full stop. And I think that's why it didn't think 403 was the appropriate reliance here because they said there is no probative value. So if it went back on remand on the 403, and we said, well, there's at least some probative value, then, I mean, they've already made some findings in their opinion with respect to the prejudice and the confusion of the jury. So they're presumably gonna find that and then just have to reweigh on the question of probative value. So what's wrong with that? I think what's wrong with that, Your Honor, if this panel intends to rewind the entire jury verdict and grant a new trial on the ground at the district court- No, I'm talking about a remand for the district court to do an analysis under 403. Well, then that was already- We don't know what would turn from that, whether they would reach the same conclusion or whether the district court itself would say we need a new trial. We do know, Your Honor. And this is something I can point you to and we can submit some supplemental appendix pages because they are in the record but not in the filed appendices. We were not able to respond to the reply's suggestion that this wasn't a 403 balancing test. But if you look throughout the pretrial conference, you'll find multiple references to the district court saying it's a balancing that I'm doing here. This is at page 39005 to 07. No, no, no, but you're eliminating what Judge Stark and I were talking about because they clearly concluded there was no probative value because this was a binding admission. So that kind of comes into that bucket. So that's the, whatever weighing they did, even if in their mind it was 403, if we, hypothetically, if we were to conclude that that was not right, then it would have to be a do-over, right? I think, too, if you conclude at the end of all of this, and I want to make a couple points about the balancing still, if I could, but if you conclude at the end of all of this that a narrow remand to the district court is warranted for her to perform a 403 balancing test, I think what you would find at the end of the day is that that test has already been done. It's already in the record. The notion that this decision on the admission was made in a vacuum is simply not accurate. At the time that the district court held that this was a binding admission, given that it was made at three different stages of the re-exam proceeding, the court also had in front of it motions in limine asking the question whether all of the other issues in the re-exam proceeding should come in. And of course, if you pull the thread and you say, all right, the testimony from Sherwin's expert can come in about this lab notebook talking about claim 18 and the other stuff they added and BPA, you would get, as the district court expressly recognized before and during trial, an entire sideshow about all the rest of the things that were said in the re-exam proceeding, confusing the jury and prejudicing the case. In fact, you wanted to introduce an expert on re-exam proceedings and you weren't allowed it. That is correct. And we made that point over and over again. Whenever Sherwin got kind of close to this line, we said, you know, we weren't permitted to introduce this expert. This expert was excluded precisely because the re-exam proceeding was not going to enter into this because it was such a sideshow. Okay, but I'm a little confused here because we're talking about 403. We're talking about possible prejudice. I understand the idea of prejudice by bringing in the whole re-exam proceeding, but I think they have a narrower argument, which is that what they want to bring in is Dr. Short's testimony as to what Perez supposedly discloses. How does 403 bear on that? Oh, it bears on that because that's a third example, I think, of Sherwin wanting to eat its cake and have it too. You know, Sherwin made the choices of date and re-exam. It now wants to back away from those choices, introduce the lab notebook without... What's the prejudice? I mean, you know, Short comes in and says, I think Perez shows something different because I read the lab notebooks and somebody did a Perez compound and included BPA in it. Where's the prejudice from admitting that piece of testimony? My point, Judge Dyke, was that it would prejudice the conduct of the trial. That was my response to Judge Prost because it would introduce an entire sideshow about the re-exam proceedings. If that evidence comes in, it would introduce its expert to put on evidence about exactly what Sherwin said in front of the examiner, in front of the board, in front of the district court, what the board held. And then you get into the questions that you were asking about whether or not it's vacated or not vacated and how that plays in front of the jury. There was an entire underlying theme here. Did Sherwin ever take the position that they should be able to introduce just Dr. Short and the lab notebook and keep out even this cross-examination or as in your affirmative case, everything that happened in the re-exam, was that? I think that's exactly what they were hoping for. I mean, it was eating the cake and having it too and then eating the cake again. They were hoping to just get Dr. Short in but to X out everything else that happened. I thought their argument to us was that they were fine with all of the re-exam coming in and it would be a fat dispute for the jury to decide whether they made a binding admission or not. Which is exactly- Are you telling me that's not what they asked for? I think below they were advocating both to have the re-exam excluded and to have Short admitted but even if they were willing to accept that broader aperture, I think that just poses the fundamental question that the district court repeatedly addressed which is, this is a balancing 390 or 05 to 07. All of this re-exam stuff is not coming in. I'm a little confused by your answer to Judge Dyke's question about prejudice because rightly or wrongly, I think at least in a footnote, the district court did address prejudice and what the district court said is not what you said. They concluded PBG would be prejudiced simply by having to litigate an issue that was resolved by Sherman's admission before the USPTO in a rebuttal expert report having prepared for trial and all of this stuff based on an assumption. Is that not your understanding of the prejudice? That is absolutely correct, Judge Prost. I think my point was that that goes to the question of an estoppel ruling. If we're talking also about a simple evidentiary ruling under 403, there's the different balancing analysis that was done and my point is the district court also correctly concluded that it was not gonna permit some kind of second ring of the circus to talk about all of the re-exam proceeding because it would prejudice the conduct of the case. So I'm using prejudice in two different ways. Your reading is exactly right. The district court concluded that this would prejudice PPG precisely because that's not how PPG had prepared for this case. How could it have when Sherwin had been very clear all along that the whole theme of its approach in the re-exam proceedings. But isn't their answer to this, at least part of their answer to this, I don't know how things went down in sequence but the fact that this was in a rebuttal expert report, are they gonna be able to tell me, well, their discovery only produced the lab notebooks after the first expert report and before the rebuttal and that's what necessitated the rebuttal expert? I think depending on the timing of when these surfaced, that well could be their argument. I'm not sure I saw that in the brief. But then the rebuttal to the rebuttal is, in those circumstances, what Sherwin would be entitled to do is to come in and say, okay, you have your lab report with example 18 and adding the epoxy and all of the above. Still Perez doesn't teach BPA-free and if you're gonna talk about your lab report, we're gonna bring in all of this. That's what would have happened and that's where the district court was perfectly correct in landing. So in order to remand this case, in order to make that finding, you would have to conclude, and I'm not hearing you suggest that a new trial is warranted. Again, I think I heard you say, Judge Prost, a remand for this finding. Well, I'm just asking questions. Yes, but if you were to remand just for that finding, I think you would conclude, we're happy to submit some additional appendix pages to make it easier for you, that this balance and this discussion happened over and over again. If it would be helpful, I think both parties could submit a short letter explaining where those sites are or are not if you're Sherwin's counsel, but we'd be happy to do that. Okay, one more question if I might. I'm a little concerned about if we were to affirm the district court that this is a judicial admission or judicial estoppel, that it might disrupt proceedings in the patent office. It might make it such that, I don't know, patentees are always going to be saying, I'm reserving my rights, I don't want to make this admission, maybe fighting issues that they otherwise wouldn't have to fight. Should I have that concern that this case potentially could disrupt how proceedings will go in the patent office? I don't think you should, for a couple of different reasons. The first is, what you could conclude here is that it was within the district court's equitable discretion to do what she did. But second, most importantly, as to the patent proceedings, what is remarkable about this case and the way that the opinion could be written narrowly is not that a party said in front of the patent examiner some throwaway statement or even made an assumption. There is no assuming arguendo here. Would the case be different if they had said, we're doing this arguendo, it's their patent, we don't actually know, but we're not going to fight about it? I think it might be different. I think it might be different. But what the entire strategy was, not just in front of the examiner, but doubling down in front of the board, tripling down in front of this court, quadrupling down at oral argument, is that BPA-free meant not flexible enough. That was the entire point. And I think it is absolutely fair as an equitable matter to hold someone to that strategic admission. If in the end it means that patentees are protecting themselves by dropping a footnote and saying, we don't mean this to be an admission in any other proceeding, that seems like a light lift compared to permitting Sherwin to go back on its quadrupling down on the statement that they're now trying to contest. Okay, we'll give you two minutes on the cross appeal. Thank you, Your Honor, I appreciate it. No, go ahead. Oh, thank you, I thought you meant rebuttal. Thank you. So on the cross appeal, just a couple points. The point of our cross appeal is that when this court held finding Valspar I moot, that the covenant not to sue covered the subject matter of the patent, that was an implicit license that covers and constitutes reason to affirm on a broader ground. Since it's a unilateral covenant not to sue, should we only care about their unilateral intent in making it? No, I think quite the opposite. Can you point to any case that would say we should be concerned with anything other than their intent when interpreting a unilateral covenant not to sue? I can't, but it's for a simple reason, Judge Stark. I don't see anyone as having really pulled this kind of stunt before, where you've got a unilateral covenant not to sue that this court says covers the subject matter of this patent. I don't think characterizing this as a stunt is useful. Okay, let me rephrase. No one has ever tried to submit, in order to find a case moot, a covenant not to sue followed it up by putting in the mail to headquarters of their opposing party a letter that says, by the way, this is not valuable at all. We're not giving it to them. You had several opportunities to complain about that to this court, didn't you? Well, we did, but I think that's a kind of sauce for the goose sauce for the gander problem. We knew about the other proceeding involving the other patents, right? You absolutely did, yes. And I think that's important in bearing on when this court said entire subject matter of the patent. It's not for this court to say, and by the way, this means the Minnesota proceeding is kaput. What this court said and what Sherwin never sought rehearing on, and I think this is important, when this court said in February 9th, that this covers the entire subject matter of the patent, PPG went to the Minnesota court on February 28th and said, we have an implied license because of that language. There were still almost two weeks left for Sherwin to come back into this court and say that language was too broad. We didn't mean to convey a license to the entire subject matter. We were trying just to get this particular appeal kicked. But of course, they didn't do that. They didn't seek rehearing or a narrowing of the opinion because the opinion would have unraveled. The only way that this court could have found the issue moved is precisely because they construed the covenant not to sue to cover the subject matter of the patent. Wait a minute, what case involves a situation where we've continued to review a re-exam because there's a continuation patent? I think there are a number of cases that stand for the principle that when you have a question about mootness, you take into account the continuation patents. So Arkema is one. ABS Global would be another. And what do those cases involve? Arkema involved a controversy that this court found a sufficient controversy existed, and I'm quoting now where the, not yet, where the patentee had accused the same party of infringement over, quote, the same technology in related litigation, close quote. That was enough? These are different patents. I don't know the answer to that. But in any event, the only way that this, if you put that together with all of your cases that talk about that. I'm not aware of a case, and I take it you're not able to cite me one, where a review had proceeded in a re-exam or IPR because even though the patented issue was canceled or there was a covenant not to sue, there were related patents pending somewhere else. I'm not sure that there is such a case. Well, I think two answers. The first is that there may not be such a case because this is such a wildly unusual fact pattern where you have a decision that knocks the legs out from an appeal and then continuing infringement on continuation patents. What you do have are two cases, one of which Chita Omni says that a covenant not to sue on the parent patents confers an implied license unless the parties mutually agree to the contrary as to continuation patents. So you have that out there. Then you have the ABS and Arkema line of cases, which says there is still a sufficient case or controversy for this case to continue on with an, this court to continue on with an appeal in circumstances where there is litigation as to related patents on the same technology. And here, of course, you have litigation as to continuation patents on exactly the same product. But maybe it was in a little bit of a different context, but didn't we say, granted it was a non-prep, but it was in Valspar II, that it was clear that this court's intent in Valspar I was to nullify the entire inter-parties re-exam without any collateral effect on other litigation. I think you can read that together as we explain in our reply brief with the statement in Valspar I about the entire subject matter of the patent. It was neither the first panel's intent nor within its purview to say, as I said earlier, by the way, this means the Minnesota litigation can't go forward. That couldn't have been its intent because all that was in front of it was whether or not this case was moot. And the reason the panel found this case moot was precisely because of the broad covenant not to sue that they interpreted and Sherwin never challenged, never came back and said, this is causing us problems now in Minnesota. We need to seek panel rehearing to get a narrower construction of our covenant not to sue. That was not done. Okay, I think we're out of time. Thank you, Your Honor. Mr. Castanis, you have five minutes. Thank you, Your Honor. With regard to the invalidity issues, we continue to believe that this case should be reversed as a matter of law on the anticipation and obviousness issues. I don't think I'll use my rebuttal to belabor those issues. We don't think that Perez, either alone or in combination, discloses the elements of Sherwin's claims, not organic solution polymerization, not a can coating, not the testing limitations, and not the oxirane limitation either. With regard to the new trial issue, this is not just an evidentiary issue. It is not a balancing issue. We, in effect, had a verdict directed against us. Look at Appendix 38-992. The instruction that was given to this jury was Perez discloses a BPA-free coating. That was, in effect, a directed verdict with regard to an essential element of one element of every single one of Sherwin's five asserted claims. It was their burden to prove, by clear and convincing evidence, that each of our asserted claims was invalid. They were relieved of that burden by this instruction. With regard to the judicial estoppel issue that each of you has had a dialogue with my friend about, the Third Circuit requires, as an essential element of judicial estoppel, bad faith. My friend said that bad faith isn't required, but the Third Circuit will apply when we're talking about the effect of a PPHE proceeding over which we have exclusive jurisdiction. I'm not aware that we said that in those circumstances that we apply regional circuit. I'm not sure that you have, but I'm not sure why you wouldn't look to the general rule of other circuits as well here. Bad faith is a general requirement of the application of judicial estoppel. Not in other circuits. Well, in most circuits it is. And here, there is no bad faith. And again, we are in the world of equity, Judge Dike, and it would be enormously inequitable to find judicial estoppel in this case when, of course, we were agreeing with an assertion that they made in the first instance. And that, at least with regard to a coding, and by the way, again, go back and look at that instruction. The instruction was that Perez discloses a BPA-free coding, not an intermediate, which is actually what the patent is principally directed to, but a BPA-free coding. And of course, the notebook would have proven that a coding made according to Perez was not BPA-free. The alternative balancing- I'm having trouble understanding how a notebook is binding as to what the patent discloses. It's not binding, but it's evidence. It's evidence of what the patent discloses. I mean, the fact that you make a compound according to the patent and add something that's not in the patent, how does that show that that added thing is in the patent itself? If it would have been a coding according to Perez, it would have been proof that Perez does not disclose a BPA-free coding. And I think that would have been powerful evidence that Perez is not what they said it was. In making the commercial embodiment, because you choose to add BPA, that means that that's a requirement of the patent? It doesn't say that it's a requirement of the patent, but that a coding made according to the patent would be BPA-free. But while we're talking about equity here, I also want to point out that, I think I either may have misspoken or may have been incompletely informed when I was talking to you earlier about whether we said that we shouldn't be held to our statement earlier because of the vacatur of the prior decision. And in fact, if you look at the judge's decision in Appendix 75, we in fact did say to the court that the vacatur wiped the slate. There's no question you said it to the district court, I just didn't see it in your briefing here. Well, yeah, we might not have highlighted it to the court here, but yes. There's a difference between highlighting it and saying it, can you show me why you said it in blue? No, I can't right here, but I just wanted to make sure to say that that was part of what we argued to the district court here. No, fair enough, but that doesn't mean that it's here on appeal. But again, Judge Stark, you asked my friend about alternative grounds under Rule 403. This court can't do balancing with regard to Rule 403. Is that a question of Third Circuit law? I think that's gotta be a question of Third Circuit law. It's an evidentiary ruling with regard to the conduct of a trial that took place. Any comment on the idea that maybe we would remand for the district court to explicitly do that balancing and decide thereafter whether the trial is necessary? Well, I think the problem with doing that there is that this is not, as I pointed out earlier, this isn't just a question of an evidentiary admission because this was effectively the direction of a verdict with regard to not holding them to their proof with regard to this element. Just one element. But can I ask, just on the cross appeal, FALSIFAR I does use this broad language absolving PPG of any possible infringement of the subject matter. Why does that language not mean what they're saying, or at least raise an issue that you could have come back to this court to get your consideration of? So I think if you look at the non-presidential opinion in that case, in FALSIFAR I, the first reference to the covenant makes very clear that the covenant was, quote, with respect to the two patents that are the subject of the PTAB decisions. And then the later reference is subject matter. So I don't think there was any ambiguity in that decision, that the later reference to subject matter was a reference to the earlier, quote, two patents that are the subject of the PTAB decisions. And of course, I don't think that later reference to subject matter was an effort to interpret the clear language of the covenant. Is there anything that they could have done after receiving the unilateral covenant to keep their appeal alive, or was that unilateral covenant, they were just out of luck at that point based on your unilateral action? They just could not press the appeal any longer? Well, I don't think there's anything that they could have done. I mean, they did argue, of course, that, in fact, they went to the court and said, we need vacatur because otherwise Sherwin will argue, in Minnesota, where the case was pending at the time, Sherwin will use the decision of the board in the Minnesota case and argue and use the statements in that case in their favor. So we need vacatur. So they clearly knew the case was going to continue. That's, in fact, the very reason that they gave for seeking vacatur in that case. So I think everybody understood that this litigation was going to continue. Okay, I think we're out of time. I think, thank you. With regard to the cross-appeal, we'd ask you to refer. Thank you. And we'll give you one minute since Mr. Castanhas briefly discussed the cross-appeal. Give you one minute. Thank you, Judge Dyke. Just a couple points. The first is the distinction that Mr. Castanhas is making now between the earlier statement of Vals Varwan with regard to the two patents and the later statement about no infringement as to the subject matter of the patents, I think proves our point. The subject matter of the patents includes the continuation of patents that issue from it. And just to be very clear, the Minnesota litigation was precisely the reason that PPG offered at Appendix 1770 as the reason why this case would not be moved even after the covenant not to sue was submitted. It was available to Sherwin to come back and ask for narrowing language. They didn't do that because they understood, as we did, that doing that would mean that the case would no longer, the appeal would no longer be moved. They made their bed. The Federal Circuit, this court, decided that it absolved PPG of infringement of the subject matter of the patent, and this is the consequence, if there are no further questions. Thank you. Thank both counsel, the case is submitted.